1                 UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
2                   CENTRAL DIVISION
                LEXINGTON, KENTUCKY
3

UNITED STATES OF AMERICA,    ) Lexington Criminal
4                          ) Action No. 13-81
     Plaintiff,          )
5                          ) At Lexington, Kentucky
-vs-                     )
6                          )
DOUGLAS LEROY MARTIN,      ) March 24, 2014
7                          ) 1:35 p.m.
     Defendant.          )
8

9

10      TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
         BEFORE THE HONORABLE DANNY C. REEVES
11          UNITED STATES DISTRICT JUDGE

12

13 Appearances:

14 On behalf of Plaintiff:    GARY TODD BRADBURY, ESQ.
                         Assistant U.S. Attorney
15                        260 West Vine Street
                        Suite 300
16                        Lexington, Kentucky  40507

17 On behalf of Defendant:    ANDREW M. STEPHENS, ESQ.
                          107 Church Street
18                        Suite 200
19                        Lexington, Kentucky  40507

Court Reporter:           PEGGY W. WEBER, RPR
20                        Official Court Reporter
                        U.S. District Court
21                        P.O. Box 362
                        Lexington, Kentucky  40588
22                        (859) 421-0814

23

24

25 Proceedings recorded by mechanical stenography,
transcript produced by computer.

1     (Whereupon, the Sentencing Hearing proceedings

2  commenced on Monday, March 24, 2014, at 1:35 p.m., on

3  the record in open court, as follows.)

4          THE COURT:  Thank you.

5          Good afternoon.

6          Ask the clerk to call the matter scheduled for

7  1:30, please.

8          THE CLERK:  Yes, Your Honor.

9          Lexington Criminal Action Number 13-81,

10  United States of America v. Douglas Leroy Martin, called

11  for sentencing.

12          THE COURT:  Thank you.

13          If counsel could state their appearances,

14  please.

15          Mr. Bradbury, good afternoon.

16          MR. BRADBURY:  Good afternoon, Your Honor.

17          Todd Bradbury for the United States.

18          THE COURT:  Thank you.

19          Mr. Stephens.

20          MR. STEPHENS:  Judge, good afternoon.

21          Andrew Stephens on behalf of the defendant,

22  Douglas Leroy Martin.

23          THE COURT:  All right.  This is Mr. Martin at

24  counsel table.

25          MR. STEPHENS:  It is, yes, sir.

1          THE COURT:  Thank you.

2          This matter is scheduled for a sentencing

3    hearing this afternoon.

4          Before we proceed with the hearing, let me

5    first confirm that Mr. Martin has had the opportunity to

6    review his presentence report and also to discuss it to

7    his satisfaction with his attorney.

8          Is that correct, Mr. Martin?

9          DEFENDANT MARTIN:  Yes.  I was trying to go

10   over it now again briefly real quick to make sure.

11         THE COURT:  All right.  Mr. Martin, your

12   presentence report will be placed in the file under seal.

13   It is available if you should need it for any reason or

14   if the attorneys should need it, but it's not available

15   for the general public to review.

16         There are a number of objections that have been

17   filed to the presentence report that will need to be

18   resolved before we can proceed with the hearing.

19         Before we get to the objections, let me note

20   for the record that I have received a number of letters.

21   Those that were received prior to today have been filed

22   in the record of this proceeding.

23         And just -- just a bit before this hearing was

24   scheduled, I also received letters from Mr. Martin's

25   older brother, Metholonia Martin, and also from his

1   mother Sylvia Sawyers, and copies of those letters were

2   made for counsel.

3          Have you had a chance to review those

4   materials?

5          MR. BRADBURY:  I have, Your Honor, and I had

6   also received one from Ms. Powell that I filed in the

7   record as well.

8          THE COURT:  Yes, sir.  I believe it was similar

9   to the copy that the Court had received if I'm not

10  mistaken.

11         These additional letters will be placed in the

12  file, the originals, at the conclusion of the hearing.

13  It would not appear that they have personal identifying

14  information that's not otherwise available, so they will

15  be filed in the record.  Unless requested otherwise, they

16  would not be filed under seal.

17         Turning to the objections -- I should also note

18  for the record I have received the sentencing memorandum

19  that has been filed by the United States that addresses

20  several of the issues raised in the defendant's

21  objections.

22         The objections to the presentence report have

23  been addressed in a third addendum to the presentence

24  report.  In that addendum the probation officer list

25  objections to paragraphs 2, 3, 4, 5, 6, 7, 8, and 9 as

1   objection number 1.  This goes to the conviction in the

2   case.  The defendant disputes the fact that underlie the

3   conviction.

4           Let me ask the parties if either the defendant

5   or the United States intends to introduce any proof,

6   either with regard to the first objection or the other

7   objections that have been listed.

8           Mr. Stephens?

9           MR. STEPHENS:  Your Honor please, I didn't have

10  any proof to offer in -- to any of them other than legal

11  argument.

12          THE COURT:  All right.  Do you wish to be heard

13  on the first objection in this matter?

14          MR. STEPHENS:  Well, as I indicated in my

15  letter, Your Honor please, the case was tried before a

16  jury.  The Court heard the facts, as well as anyone else

17  did, and the jury convicted.

18          I recognize that puts an extraordinary burden

19  on Mr. Martin to undo the factual allegations contained

20  in those paragraphs 2 through 9.

21          Obviously, since this Presentence Investigation

22  Report goes a long way with him into the Bureau of

23  Prisons, it is incumbent upon me to simply make a record.

24          You heard the proof.  The proof is enough to

25  overcome the presumption of innocence, and the jury

1  believed that the government had succeeded beyond a

2  reasonable doubt.

3          He's not going to agree to those facts because

4  he disagrees with those facts, but for purposes of this

5  sentencing, those facts and the allegations made do not

6  affect the guideline calculation in any way.

7          I think my record has been made, and there is

8  really nothing further to say about that.

9          THE COURT:  All right.  And for the record I

10  will overrule the first enumerated objection that goes to

11  paragraphs 2 through 9 of the presentence report.  Those

12  facts were supported by evidence offered during the trial

13  of the case and do go to the underlying conviction.  The

14  jury had sufficient evidence and made a determination

15  based upon a higher standard that would be applied at

16  this stage of the proceedings.

17          The jury's standard, of course, is beyond a

18  reasonable doubt.  At this point the Court would consider

19  evidence of a preponderance.  The Court feels not only

20  that there is a sufficient preponderance of the evidence

21  to support the information contained in paragraphs 2

22  through 9 based upon the testimony and other evidence

23  offered during trial, but the Court also concludes that

24  there was more than sufficient evidence to meet the

25  beyond a reasonable doubt evidentiary burden that the

1    jury had.

2              And, therefore, based upon that determination

3    will overrule the first objection.

4              The second objection does affect the guideline

5    calculations.  Mr. Martin objects to paragraph 16 of the

6    presentence report and states and -- or asserts that he

7    did not physically possess the weapon that was actually

8    found in the possession of a co-defendant in the case,

9    Mr. Udousoro.  It was in Mr. Udousoro's possession at the

10   time of the traffic stop and arrest.  Of course,

11   Mr. Martin was present in the vehicle at the time of that

12   traffic stop.

13             The probation office has addressed this matter

14   under Section 2D1.1(b)(1), which indicates that a

15   two-level increase should be applied if a weapon was

16   possessed.

17             Probation office also refers to

18   Section 1B1.3(a)(1)(B) with regard to jointly undertaken

19   criminal activity, essentially relevant conduct of one

20   co-defendant that would be reasonably foreseeable to

21   others in furtherance of the jointly undertaken criminal

22   activity would be assessed to the defendant as well.

23             And the probation office also refers to

24   application note 11(a) to Section 2D1.1, which indicates

25   that the firearm enhancement should be applied if the

1  weapon was present, unless it's clearly improbable that

2  the weapon was connected with the offense.

3          Again, I understand the parties do not have

4  evidence they would like to present, additional evidence

5  on this point, but would like to perhaps argue the legal

6  issues.

7          Mr. Stephens?

8          MR. STEPHENS:  Your Honor please, one benefit

9  of having a trial is that more facts are at the Court's

10 disposal than would normally be in paragraphs 2 through 9

11 on the factual resume of the case.

12         In reference to this, I would acknowledge that

13 the application note almost shifts the burden in this

14 matter to show that it was clearly improbable that the

15 weapon was connected to the offense, which does appear to

16 me to make it incumbent upon me to show that it's

17 improbable that the weapon was not used in the offense.

18         As you remember, the stop was made with

19 Mr. Udousoro driving in the front seat.  Mr. Martin was

20 in the back seat.  The weapon was not secreted somewhere

21 in the car.  The weapon was secreted on Mr. Udousoro's

22 person, as was the drugs that Mr. Udousoro had.

23         I think the evidence would indicate that the

24 weapon was never brandished.  In fact, when Mr. Udousoro

25 was asked to step out of the car, he announced that he

1    has a weapon.

2             I don't believe there was any proof that

3    indicated that Mr. Udousoro had been given the weapon by

4    the defendant.  I don't know that other than Mr. Martin

5    being physically present in the back seat of a car in

6    which the weapon was located on Mr. Udousoro that there

7    was any evidence during the time of this alleged

8    conspiracy, that the weapon had ever been shown in front

9    of Mr. Martin, had ever been spoken to by Mr. Martin.

10             And I don't think Ms. Cavezza, who was the one

11   that evidentially told police officers about the

12   existence of possible drugs in the vehicle, knew anything

13   about the weapon either, and did not indicate that there

14   was any relationship between Mr. Martin and Mr. Udousoro

15   in terms of the possession of the weapon.

16             So while I acknowledge 1B1.3(a)(1)(B), that the

17   jury essentially said this was a joint undertaking

18   because it found Mr. Martin guilty of a conspiracy, it

19   found Mr. Martin guilty of a conspiracy to possess with

20   intent to distribute narcotics.

21             There was no finding relevant to the weapon

22   because there was no charge about the weapon.  And, I

23   guess, in certain drug offenses there's a difference

24   between if a weapon is shown in the transaction, if a

25   weapon is brandished at a transaction, or if, in fact, a

1  defendant says in a drug transaction with other nefarious

2  people that he has a weapon or let it be known that

3  there's a weapon.

4         In this particular case because of the facts of

5  the case, there was no use or brandishment of the

6  firearm.  It was simply possessed, and I think it just

7  stretches the law here to indicate that it was in

8  possession of Mr. Udousoro was in furtherance of

9  Mr. Martin's conduct of this offense.

10        And just for the record, he would object to

11 application note 11(a) simply because I think that

12 unfairly shifts the burden to him.

13        And I think that legal argument has been made.

14 So that's all I can say.

15        THE COURT:  All right.  Thank you.

16        Mr. Bradbury?

17        MR. BRADBURY:  Yes, Your Honor.

18        Mr. Stephens is correct, it was jointly

19 undertaken criminal activity.

20        I would also note that the Court heard sworn

21 testimony at trial that Mr. Martin traveled from Detroit

22 to Lexington with Mr. Udousoro who had that weapon.

23        I would also note that Ms. Cavezza was in the

24 vehicle, and we did apply the two-level enhancement for a

25 firearm because she was in the -- in the vehicle with the

1    other defendants with the weapon as well.

2              Clearly, it would apply to Mr. Martin.

3              THE COURT:  All right.  Thank you.

4              Well, the Court will note that while

5    Mr. Udousoro has entered a guilty plea to Counts 1 and 2,

6    Count 2 being carrying a firearm during and in relation

7    to a drug trafficking offense, that that would not

8    necessarily apply to Mr. Martin, unless the Court does

9    find that the actions of the defendant in carrying the

10   firearm, furthering the drug trafficking crime, would be

11   reasonably foreseeable to Mr. Martin under the relevant

12   Section 1B1.3, and also under Section 2D1.1.

13             The Court does, however, make that finding that

14   in this particular case it was reasonably foreseeable

15   that Mr. Udousoro was carrying a weapon.  The facts of

16   the case do indicate that these two defendants,

17   Mr. Udousoro and Mr. Martin, were traveling together for

18   some period of time from Detroit to the Lexington area.

19   They were together.  It is reasonably foreseeable that

20   Mr. Martin would have known, as other co-defendants were

21   aware, that Mr. Udousoro was carrying a weapon at the

22   time of this particular offense.

23             It's also reasonably foreseeable that an

24   individual, or individuals such as these defendants,

25   would be possessing weapons in furtherance of their drug

1    trafficking activities, which were extensive, as the --

2    as the jury readily found.

3           With regard to Section 2D1.1, there is a -- the

4    two-level increase if a weapon was possessed.  And, of

5    course, the application notes would shift the burden to

6    the defendant to show that the weapon was not -- was

7    clearly not possessed in connection with the drug

8    trafficking offense.

9           But in this particular matter, when we look at

10   all of the facts of the case, it is -- it is clear that

11   the defendant not -- this defendant not only knew that

12   the weapon was possessed, but would have reasonable cause

13   to believe that it was in furtherance of the drug

14   trafficking crime and, therefore, has not met his burden

15   under the application note that has been referenced to

16   Section 2D1.1.

17          That -- again, that application note indicates

18   that -- that the two-level enhancement reflects the

19   increase danger of violence when drug traffickers possess

20   weapons.  Enhancements should be applied if the weapon

21   was present, unless it is clearly improbable that the

22   weapon was connected with the offense.

23          And, again, there's no proof at all to approach

24   that burden.  Therefore, the objection will be overruled,

25   and the two-level increase will be applied as reflected

1   in paragraph 16.

2          Next objection relates to paragraph 17.  In

3   paragraph 17 under Section 2D1.1(b)(14)(D), the probation

4   office has assessed a two-level increase of the

5   defendant, as the defendant received an adjustment under

6   3B1.1, and obstructed justice in connection with the

7   investigation or prosecution of the offense.

8          I understand that it's the position of the

9   defendant that because he was convicted separately of

10  a -- of a separate count of intimidating or force against

11  a witness under Section 1512 of Title 18, that it is his

12  position that this would essentially constitute double

13  counting, notwithstanding the fact that the Court must

14  apply the higher of the total offense level for Count 1

15  or Count 3 based upon grouping that takes place.

16         And in this particular case the guideline

17  calculation for Count 3 is effectively nullified based

18  upon the total offense level for Count 1.

19         But I will hear the argument of the parties if

20  you would like to address that matter.

21         MR. STEPHENS:  Your Honor please, you have

22  spoken legally correctly I think.  But the verdict in

23  Count 3, in essence, is swallowed by the verdict in

24  Count 1.

25         And while the application note at 2J1.2 -- I'm

14

 1   sorry, the application note at (b)(14)(D) of 2D1.1

 2   indicates that you don't count it if, in fact, there is a

 3   conviction under an offense enumerated by 2J1.2, which is

 4   obstruction.

 5           So what happens is that as to Count 3 the two

 6   points does not get added because, in fact, if it was

 7   added to Count 3, it still wouldn't matter because

 8   Count 3 doesn't get to level of Count 1.  And I really

 9   understand that.

10           But it would seem to me that the prohibition

11   against counting it should apply bilaterally, that is, to

12   both offenses, which should keep the probation officer

13   from being able to assess it to the Count 1 conviction.

14   Because, in fact, the jury spoke and said, okay, we

15   believe that his phone conversation with Ms. Cavezza was

16   obstructive behavior and, in fact, he was convicted of

17   that.

18           Now, while that conviction in and of itself may

19   not affect his ultimate sentence, the affect in the

20   Court's mind when considering the 3553(a) factors at the

21   end of the day, I believe would be relevant for your

22   consideration.

23           And, for instance, you could say, I may choose

24   to give Mr. Martin a lower sentence on the Count 1

25   guidelines if there is not the obstructive behavior as

1   found in Count 3, but since there was, I'm going to take

2   that into the --

3          THE COURT:  Right.

4          MR. STEPHENS:  -- 3553(a) factors.

5          So that's my trouble with this.  I think the

6   prohibition should apply to Count to 1 and Count 3.

7          THE COURT:  Well, here's the problem with the

8   argument.  Let's say that an individual is only charged

9   with intimidating a witness or causing a witness to give

10   a false statement.  Let's say Count 3, I suppose it would

11   be, in this case.

12          MR. STEPHENS:  Yes.

13          THE COURT:  And during the course of the trial

14   the defendant gets on the witness stand and lies,

15   obstructs justice under 3C1.1, which is referenced in

16   probation office's response.

17          MR. STEPHENS:  Yes.

18          THE COURT:  The application note does indicate

19   that there can be further obstructive conduct.  In other

20   words, you can be charged with a substantive offense of

21   intimidating or causing a witness to give a false

22   statement, and then during the course of the trial on

23   that you can testify falsely, which constitutes

24   obstructive conduct --

25          MR. STEPHENS:  Correct.

1          THE COURT:  -- under 3C1.1.

2          MR. STEPHENS:  Right.

3          THE COURT:  Now, that's the situation, I

4     believe, we have here, because we have a situation for

5     Count 2, and admittedly the probation office didn't

6     refer to 3C1.1 in the presentence report with regard to

7     Count 2, but it's obstructive conduct.  That's what we're

8     talking about in 2D1.1(b)(14)(D), obstructive conduct.

9     And there is the cross-reference, and there's the

10    reference in the application note to 3C1.1.

11         In this particular case we have Mr. Martin

12    testifying, in the Court's opinion, falsely to material

13    facts, knowingly testifying falsely to material facts,

14    that if the jury believed him, would result in an

15    acquittal as to Count 2.

16         In other words, he got on the witness stand and

17    said Ms. Cavezza lied.  He said, I was not involved in

18    any drug trafficking activity.  I was going down

19    basically to party with these two women for his birthday,

20    and he didn't -- he claims that he didn't have any

21    involvement whatsoever in the drug trafficking

22    activities, which not only the jury disbelieved him, but

23    I disbelieved him.

24         And I believe that he perjured himself when he

25    did that.  He made false statements to the Court, and he

1  made false statements to the jury, which would constitute

2  obstructive conduct under 3C1.1.

3           And if that qualifies -- and it would qualify,

4  of course, if it related to Count 3, if he testified

5  falsely that, no, that he didn't make those statements to

6  Ms. Cavezza that were recorded.

7           So it could easily count for Count 3, but in

8  this particular case, he testified falsely about his

9  involvement in Count 2, so why can't it count for

10 Count 2?

11          MR. STEPHENS:  Well --

12          THE COURT:  I'm sorry, Count 1.  I'm sorry,

13 Count 1.

14          MR. STEPHENS:  I understand with what the Court

15 has said that the obstructive behavior is further on

16 involving the testimony at trial.

17          The -- the objection was more to the

18 intimidation of it.  I -- and, I guess, I understand that

19 you're saying that because you made a finding he was

20 materially false in his testimony, that additional

21 obstructive behavior occurred, which actually is kind of

22 a separate issue to my mind than the allegation that he

23 did or did not intimidate Ms. Cavezza for which the

24 conviction rests under Count 3.

25          So to be very frank with the Court, if the --

```
 1   if the two points had been set simply for those facts as
 2   opposed to the threatening facts, I would certainly -- I
 3   think my argument changes frankly.
 4            THE COURT:  All right.  Now, let me take your
 5   argument a step further.  Let's assume for a moment that
 6   he was never charged with Count 3.
 7            MR. STEPHENS:  Okay.
 8            THE COURT:  If -- and if he's never charged in
 9   Count 3, that information still comes in if it's
10   obstructive conduct.
11            MR. STEPHENS:  Yes.
12            THE COURT:  The information is still relevant
13   at trial and still would result in a two-level increase
14   for obstruction under this particular section, under
15   2D1.1(b)(14)(D), because you wouldn't -- it takes away
16   your argument that that would be double counting.
17            MR. STEPHENS:  I don't disagree with that
18   finding, yes, sir.
19            THE COURT:  And the guideline calculation would
20   be essentially the same.  It will be exactly the same.
21            MR. STEPHENS:  It would in fact.
22            THE COURT:  It wouldn't change the guideline
23   calculation one iota.
24            So the only argument would be that the Court
25   may consider it differently based upon the statement that
```

1   you made, that the Court may look at this somehow

2   differently under Section 3553.

3          MR. STEPHENS:  Well, I suppose you're correct

4   in that actually.  And the generic way that paragraph 17

5   is stated it simply parrots the wording of the two-point

6   enhancement of 2D1.1, obstruction of justice in

7   connection with the investigational prosecution of the

8   offense.  And I read it the other way.  I understand what

9   the Court is saying.

10         THE COURT:  All right.  So, in essence -- the

11  bottom line is there's no additional penalty that's

12  imposed under the guidelines for the conviction for

13  Count 3 in addition to Count 1 because of grouping.

14         MR. STEPHENS:  I concur.

15         THE COURT:  All right.

16         MR. STEPHENS:  Right.

17         THE COURT:  Thank you.

18         Mr. Bradbury?

19         MR. BRADBURY:  I think we have resolved the

20  issue.

21         THE COURT:  All right.  Well, the Court, for

22  the reasons that were stated earlier in my questions to

23  Mr. Stephens, the Court will overrule the objection.

24         Legally this would not be double counting

25  because it does not result in an increase in the offense

1   calculations.  Count 1, the calculations, result in an

2   adjusted offense level of 32, and the calculations for

3   Count 3, which is the obstructive conduct, the

4   substantive charge, results in the adjusted offense level

5   of 24.

6            The Court then would look at the higher of the

7   two in making a determination, and essentially would look

8   at -- would look at Count 1.

9            So there -- legally there would not be an

10  argument that could be made of double counting because it

11  does not increase the offense level.

12           Also, for the reasons that were stated, the

13  Court also finds that there was other obstructive conduct

14  that could be considered under 3C1.1.

15           Again, the Court notes, however, under Rule 32,

16  that Section 3C1.1 was not listed in the presentence

17  report, but it -- effectively that would nullify any

18  argument, any factual argument, that could be made under

19  this particular section.

20           So the Court will overrule the objection to

21  paragraph 17 of the presentence report.

22           The next objection relates to whether the

23  defendant should be considered an organizer or leader of

24  the activity, the criminal activity.  He is assigned a

25  four-level increase under Section 3B1.1.

1        I believe one issue that defendant wishes to

2   raise at this time is whether the conduct involved five

3   or more participants, at least one of which was subject

4   to the defendant's instruction.  He was either

5   instructing or directing at least one of the individuals

6   as to how to participate in the actions under 3B1.1.

7        Mr. Stephens, in this particular case we have

8   four defendants convicted, and we have one defendant that

9   is a fugitive from justice at this point.  That would --

10  that would be five.

11       MR. STEPHENS:  That would be five.

12       I guess my concern is that since there is a

13  fugitive from justice, if he was ultimately found or had

14  been found tried and acquitted, would that still -- even

15  if the Court were to believe under relevant conduct,

16  would that still count as the fifth person?  And since

17  there has been no adjudication of that person -- and, I

18  guess, the other argument is I believe the other young

19  lady that was involved in the driving of these two folks

20  down here, her case was dismissed.  Now, that doesn't

21  necessarily mean she wasn't one of the five people,

22  that's just a judgment call the United States made to let

23  her go.

24       But I think there's an argument that

25  Mr. Udousoro is clearly one, Mr. Blackman is clearly two,

1    Mr. Martin is clearly three, and, I guess, Ms. Cavezza is

2    four.  So I have to make the argument.

3           The other thing, Your Honor please, that I

4    would ask you to consider as well is under the commentary

5    note 4 to -- and this is under 3D1.1, to distinguish a

6    leadership in an organizational role of mere management

7    or supervision.  The commentary seems to indicate there

8    are six or seven different factors that the Court should

9    look at.

10          And I note that the probation report indicates

11   clearly one of those because there was proof that

12   indicated that the defendant instructed Mr. Blackman

13   how to bag heroin up.  Now, while Mr. Martin would deny

14   that that event occurred, there is nonetheless that

15   evidence.

16          But I think it becomes incumbent that the Court

17   would have to make findings under that particular

18   commentary note concerning whether or not Mr. Martin

19   exercised decision-making authority, the nature of his

20   participation in the commission of the offense, whether

21   or not he recruited any accomplices, and I think that's

22   relevant, whether he claimed a larger share of the

23   proceeds of it, the degree of planning and organization,

24   the nature and scope of the illegal activity, and the

25   degree of control over other people.

1           And while it is apparent that he is in the car,

2    while the jury believed that he was involved at least by

3    being present at the room at the Red Roof, and while

4    there is one -- one bit of testimony that indicated that

5    he was telling Mr. Blackman how to bag the cocaine up,

6    I'm not sure that that really shows an exercise of

7    decision-making authority.  It certainly may show how to

8    do something, but I'm not sure how to do something is

9    necessarily making a decision.

10           It would appear as though Mr. Blackman was the

11   guardian of the heroin and all the other drugs that were

12   in the room.  There was obviously people that indicated

13   it was Mr. Martin's.  But as to whether or not he was

14   exercising the right to tell people what to do or not, I

15   think it's less clear.

16           Because of the jury finding, obviously the jury

17   believed that he did participate in the commission of the

18   offense.  I don't know how much real significant proof

19   there was that that was being directed at him, or by him

20   to other people, such that he would be an organizer or

21   leader of the criminal organization.

22           I don't think there is any proof at all about

23   recruitment of accomplices.

24           He may have had more money in terms of the

25   larger share, but I don't know that there was necessarily

1   any proof that he would receive X number of percent,

2   Blackman would get a lesser percent, Cavezza would get

3   lesser percent, et cetera, so I don't know that there was

4   any of that.

5          I'm not sure how much information was

6   adjudicated at the trial about the degree of his planning

7   and organization.  There were certainly phone calls

8   Cavezza was making.  There were phone calls Blackman was

9   making.  There was phone calls that everyone was making.

10         And, again, the nature and the scope of the

11  illegal activity, I think Your Honor heard, the jury

12  heard what this was all about.  It did involve multiple

13  drugs.  It did not appear to have existed over a

14  substantially long period of time.  Mr. Martin was seen

15  to have come down approximately two days before this

16  event occurred.  I wonder if that doesn't limit the scope

17  and the nature of this.

18         And, again, the degree of control of others, it

19  would seem to me in recollection of the text messages

20  that were going back and forth between various parties,

21  that there was all kinds of information going on, all

22  kind of directions.  Even Ms. Cavezza was having

23  conversations with people she was going to be selling to.

24         So I think it can be argued that the four

25  points is too high, or that the facts would warrant a two

1  part -- or two-point enhancement, but not a four.

2             THE COURT:  All right.  Thank you.

3             MR. STEPHENS:  I appreciate the opportunity to

4  argue it.

5             THE COURT:  Mr. Bradbury?

6             MR. BRADBURY:  Yes, Your Honor.

7             First, in regard to the number of participants,

8  clearly there are at least the four.  Ms. Terry could be

9  a fifth.  Certainly Mr. Hawkins, the fugitive, could be a

10 fifth as well.

11            I would also note that we heard both in the

12 phone call Mr. Martin placed to Ms. Cavezza to influence

13 her testimony, and somewhat during his own testimony at

14 trial, he was still blaming Mr. Hawkins for being the

15 primary conspirator in this, or was guilty to the -- was

16 the guilty party, and Mr. Martin was innocent.

17            So Mr. Martin puts Hawkins as the guilty party.

18 Hawkins was in the vehicle with the four of them during

19 the traffic stop.

20            We also heard testimony about Hawkins being at

21 the Red Roof Inn that night or the night before.  So

22 clearly there would be five.

23            Regarding the leadership role, organizing,

24 directing, the Court heard that Mr. Martin and

25 Mr. Udousoro met up in Detroit, that they recruited

1  Ms. Terry for some purpose, whether they wanted her to

2  drive because they didn't have valid driver's licenses,

3  whether they just wanted to bring her along for

4  entertainment purposes, or whether their intent was to

5  have her participate in the drug conspiracy, we don't

6  know, but they did recruit her.  They paid her a few

7  hundred dollars to travel with them from Detroit to

8  Lexington for some reason.

9          Mr. Martin had the room at the Red Roof Inn.

10 We had heard testimony from Ms. Cavezza that it was

11 Mr. Martin's room.  It wasn't in his name, but he had the

12 young black guy, Flex, who is Mr. Blackman, basically set

13 up in that room to sell narcotics.  She was in the room.

14 She saw Mr. Martin directing Mr. Blackman how to weigh

15 it, how to package it, how much to charge.

16          We heard from Ms. Cavezza, and we had

17 corroborating phone calls and text messages that after

18 the initial stop at the Red Roof Inn they were there

19 later that evening.  Mr. Martin had a big ball of either

20 heroin or coke, one or the other, called Ms. Terry and

21 said, "send Flex out," at which point Mr. Blackman came

22 out to the parking lot, retrieved a large quantity of

23 either coke or heroin from Martin, and went back to the

24 room.

25          So Mr. Martin is not only directing people into

1    what they should do, he's also supplying all of the

2    drugs.

3              He was conducting his own drug transactions in

4    Richmond, here in Lexington, at the Red Roof Inn, as well

5    as really being the true owner of the drugs found in the

6    Red Roof Inn.

7              THE COURT:  All right.  Thank you.

8              Under Section 3B1.1, the Court can assess an

9    aggravating role based upon the defendant's

10   participation, the level of his participation, and the

11   number of participants.

12             Subsection (a) indicates that, "If the

13   defendant was an organizer or a leader of criminal

14   activity that involved five or more participants or was

15   otherwise extensive, increase by four levels."

16             Under subsection (b), "If the defendant was a

17   manager or supervisor, but not an organizer or leader,

18   and the criminal activity involved five or more

19   participants or was otherwise extensive, increase by

20   three levels."

21             And then finally, subsection (6) -- (c),

22   subsection (c) provides that, "If the defendant was an

23   organizer, leader, manager, or supervisor in any criminal

24   activity other than that described in Sections (a) or

25   (b), increase by two levels."

28

1          Now, the application notes are also helpful.

2   Application note 2 indicates that to qualify for an

3   adjustment under this section, "the defendant must have

4   been an organizer, leader, manager, or supervisor of one

5   or more participants."  In other words, the person does

6   not have to give directions to all participants, he just

7   must be either a leader, manager, organizer, or

8   supervisor of one or more.

9          And also the application note indicates, "An

10  upward departure may be warranted, however, in the case

11  of the defendant who did not organize, lead, manage, or

12  supervise another participant, but who nevertheless

13  exercised management responsibility over the property,

14  assets, or activities of the criminal organization."

15         As counsel has also indicated, sub -- I'm

16  sorry, application note 4 indicates that, "In

17  distinguishing a leadership and organizational role from

18  one of mere management or supervision, title such as

19  'kingpin' or 'boss' are not controlling.  Factors the

20  Court should consider in making this decision include the

21  exercise of decision-making authority, the nature of

22  participation in the commission of the offense, the

23  recruitment of accomplices, the claimed right to a larger

24  share of the fruits of the crime, the degree of

25  participation in planning or organizing the offense, the

1    nature and scope of the illegal activity, and the degree

2    of control and authority exercised over the others."

3            The application note further indicates that,

4    "There can, of course, be more than one person who

5    qualifies as a leader or organizer of a criminal

6    association or conspiracy."

7            Now, in this particular case, of course -- and

8    this is a fact-intensive inquiry.  In this particular

9    case, the Court finds that there were five participants

10   engaged in criminal activity.  The Court does not include

11   Ms. Terry in that determination.  While it does appear

12   that Mr. Martin and/or Mr. Udousoro recruited Ms. Terry,

13   it cannot be determined based upon the evidence presented

14   that she was recruited for drug trafficking activities.

15   She was an exotic dancer, a stripper, and she was

16   apparently employed at the same location where

17   Mr. Udousoro was employed.

18           The Court can make a decision as -- can make a

19   determination as to whether she was hired as a driver to

20   assist, and that would be involved in the conspiracy

21   itself if she was relieving the others of driving

22   responsibilities as they were bringing the drugs to

23   central Kentucky, or whether she was here for

24   entertainment once the -- once the two arrived in

25   Lexington.

1          Now, giving the defendant the benefit of the

2   doubt that it was the latter and not the former, would

3   not include her as one of the five necessary participants

4   that would be required for either a three-level or a

5   four-level increase.

6          However, I do find that Mr. Hawkins should be

7   included.  And including Mr. Hawkins it does result in

8   five participants.

9          The point to be made here with regard to

10  Mr. Hawkins is that the Court heard testimony and

11  evidence regarding his responsibilities, his actions, his

12  involvement in the trafficking activities, and the Court

13  is required to reach a decision as to the number of

14  participants by a preponderance of the evidence.

15          And, quite frankly, even if Mr. Hawkins had

16  been tried and acquitted, if the Court believed that

17  there was sufficient evidence by a preponderance

18  standard, the Court could nevertheless include him in

19  that calculation of five participants.

20          Based upon the evidence in this case, it is

21  clear to the Court that there were at least five

22  participants, and they do include the four individuals

23  that -- that were arrested in the car as they were going

24  to northeastern Kentucky, as well as Mr. Blackman, who

25  remained back in the room, back in the motel room,

1    bagging drugs at the direction of Mr. Martin.

2            And while there is no evidence of each

3    defendant's claimed share of the proceeds of the crime,

4    it is clear to the Court based upon the totality of the

5    evidence that was presented, including the testimony of

6    Ms. Cavezza, that this defendant was, in fact, an

7    organizer or leader.  It does appear that he was the

8    person that actually possessed the drugs.  He was

9    instructing Mr. Blackman as to how to divvy up the drugs

10   for sale.

11           And as Mr. Bradbury indicates, on at least one

12   occasion when Mr. Martin returned back to the room, he

13   gave instructions for Mr. Blackman to come down.  So he

14   was instructing other individuals as to what to do in

15   order to divide the drugs so they could be more easily

16   sold at street level.

17           Considering all of that information, the Court

18   does find that the defendant was in the position of an

19   organizer or leader, and, therefore, a four-level

20   increase in the offense level should be applied under

21   Section -- I'm sorry, under paragraph 19.

22           And the defendant's objection to that paragraph

23   will be overruled.

24           The next objection relates to paragraphs 46,

25   47, and 48, in which the defendant denies that he was

1    charged in the offenses that are discussed in these

2    paragraphs.

3              And, likewise, he -- in objection number 6 to

4    paragraph 49, he believes that the case has been

5    dismissed and again denies that he's the person subject

6    to any additional criminal charges.

7              I believe in this regard the United States has

8    submitted as an attachment to its sentencing memorandum

9    information regarding the -- regarding the information

10   that is contained in several of these paragraphs;

11   paragraphs 46 through 48.

12             And, Mr. Stephens, it would appear that this

13   would not affect the guideline calculations in the case

14   because the defendant has not been assessed criminal

15   history points, but if he would like for the Court to

16   make a determination as to whether, in fact, he is the

17   person identified, I'll certainly hear arguments on that.

18             MR. STEPHENS:  If I could have just a minute.

19   As you can tell, Mr. Martin is talking to me.

20             THE COURT:  Yes, sir, take your time.

21             MR. STEPHENS:  Thank you.

22             Your Honor please, what Mr. Martin is seeking

23   of me is additional comment concerning the role offense

24   that your Honor has overruled my objection to.

25             THE COURT:  Yes, sir.

1           MR. STEPHENS:  And what I have advised him is

2    that at this point in the proceeding the Court has the

3    right to go ahead and make findings based on what the

4    Court has heard at the trial, and that his objections

5    to certain facts that the Court has relied on in imposing

6    the additional enhancements have been protected to the

7    extent that I think they can be protected, and that

8    those kinds of issues in terms of his factual denials of

9    what occurred at trial, his factual denials of what has

10   been set forth in the Presentence Investigation Report,

11   are all part of the appeal process, that they would not

12   necessarily warrant any further review by the Court here.

13           And he's given me several allegations of things

14   that he believes to be false testimony in the trial of

15   the case, which if the Court believed, might in

16   Mr. Martin's opinion change the Court's mind in terms of

17   the imposition of the additional four points on role,

18   et cetera.

19           And I guess what I've tried to explain, which

20   is difficult for a defendant to understand, when he says,

21   you know, what I heard from the stand was not true, what

22   I said was true, it just puts him in a difficult position

23   of being at a sentencing where he thinks of things that

24   are simply not the truth are being used in order to

25   facilitate the enhancement.

```
 1              So all I was trying to explain to Mr. Martin is
 2    all that record is perfected.  All that record is
 3    protected.  All of these issues can make their way to an
 4    appeal if he chooses to do that.  But that once the Court
 5    has essentially ruled on these things, that has a sense
 6    of finality at this level.
 7              THE COURT:  All right.  Of course, if the
 8    defendant wishes to testify about these matters, he may
 9    certainly do so.
10              MR. STEPHENS:  Yes.
11              THE COURT:  He has been assessed -- I have
12    already given you my decision as to obstruction of
13    justice based upon false testimony during trial.  If he
14    would like to present testimony, of course, he may do so
15    at this time.
16              If he does give testimony that the Court
17    considers to be false or fraudulent, that, of course,
18    could affect the ultimate outcome in the case because the
19    Court does consider all information under 3553, but it is
20    his determination to make.
21              MR. STEPHENS:  And that was part and parcel of
22    the discussions.  He may do it by sworn testimony to
23    refute factual allegations in the report.  He may also do
24    it in allocution.
25              THE COURT:  Yes, sir.
```

1          MR. STEPHENS:  So there are two ways.  And, I

2   guess, what I would ask the Court to do is to inquire of

3   Mr. Martin, having heard what Your Honor just said and

4   having previously heard Your Honor make a finding that he

5   was not truthful to the jury or to the Court, whether or

6   not Mr. Martin would like to give testimony.  Because I

7   think you have warned him, I have warned him, but it is

8   his right.  It's not our right.

9          So these are the kinds of things that you need

10  to make a decision about.

11         You want to say testify -- do you want to say

12  something?

13         DEFENDANT MARTIN:  Yeah.  I mean, I would like

14  to address on just one -- one issue on --

15         THE COURT:  All right.  And, Mr. Martin, this

16  is the way we're going to proceed.  We're going to take

17  just a brief recess.  I'm going to allow you to consult

18  with your attorney a little -- a little further.

19         When we come back, if you do want to give sworn

20  testimony on any of these matters, I'll certainly let you

21  do that.

22         If you want to just make a statement to the

23  Court, that's not under oath, but if you want to make a

24  statement to the Court about any of these matters, I'll

25  let you do that as well.

1          Now, after we've gone through all of these

2   objections -- and we're almost at the end.  We have just

3   this last group to address.  We're going to get to the

4   point where you are going to get to give a statement to

5   the Court.  You'll certainly be allowed to do that.

6          But if you want to give sworn testimony on any

7   of these matters, it's your right to do that.  But I do

8   want you to talk with your attorney first, because giving

9   testimony under oath has certain consequences to it, and

10  so I do want to have you talk with your attorney about

11  that before we proceed further.

12          MR. STEPHENS:  Thank you.

13          THE COURT:  So we'll take a short recess.

14          Mr. Stephens, whenever you're ready to proceed,

15  if you'll alert the clerk, and we will recall the matter.

16          MR. STEPHENS:  Appreciate it.

17          THE COURT:  We will be in recess approximately

18  five to ten minutes.

19      (Whereupon, a recess was taken at 2:25 p.m., and the

20  Sentencing Hearing proceedings continued at 2:30 p.m. on

21  the record in open court, as follows.)

22          THE COURT:  Thank you.

23          Mr. Stephens, are we ready to proceed?

24          MR. STEPHENS:  Yes, Your Honor please.  And I

25  appreciate the opportunity to have some time off the

1  record to discuss the issues that the Court has presented

2  to me with Mr. Martin, and I think he has made his

3  decision.

4           THE COURT:  All right.

5           MR. STEPHENS:  Tell him what you want to do.

6           DEFENDANT MARTIN:  Just proceed, and sorry for

7  the hold up and, I guess, I'm not going to testify or

8  nothing.

9           THE COURT:  All right.  That's fine.

10           We were addressing paragraphs 46, 47, and 48.

11  I had indicated to the parties before we took our short

12  recess that those -- the objection to those paragraphs

13  did not affect the guideline calculations, inasmuch as

14  criminal history points have not been assessed.

15           As a matter of fact, the defendant has a

16  criminal history score of zero.  But if the parties wish

17  to present any arguments and have the Court make a

18  finding as to those paragraphs, I'll certainly do that.

19           MR. STEPHENS:  Your Honor please, the only -- I

20  guess the only thing that concerns me -- because I think

21  the Court is clearly right, it does not affect a

22  guideline calculation because there's no points assessed.

23  The reason I think it has some relevance is brought up by

24  the United States in its sentencing memorandum.  It

25  comments rather forcefully and articulately that

1    Mr. Martin continues to lie about things.  And as the

2    Court has previously indicated, it has some concerns

3    about Mr. Martin's credibility.  When the Court

4    ultimately goes into those 3553(a) factors, the history

5    and characteristics of the defendant are one of the ones

6    the Court traditionally put a lot of weight on.  Normally

7    that weight is hopefully in mitigation, but in certain

8    circumstances it can certainly be one of aggravation.

9    And it would appear as though the United States has taken

10   a position of aggravation here.

11          And, you know, it's -- in these days of

12   tremendous communication and tremendous exchanging of

13   information between prosecutorial agencies and whatnot,

14   it has been consistent from Mr. Martin's perspective that

15   those things aren't him.  Yes, they do not count.  But I

16   think it -- nonetheless when you look at 44, which is

17   dangerous drugs and homicides, your eyebrows have to

18   raise.

19          45 is miscellaneous public order crime, which

20   seems concerning.  Miscellaneous public order crime

21   attempt again kind of makes you wonder what is this.

22          Then you look at the '06, and it's a robbery.

23   And, of course, under Kentucky law a robbery would mean

24   10, 20-year potential offense.

25          Obstructing judiciary or Congress or

1    legislature in commission in larceny in paragraph 48.

2    Again, those sort of carry with him an ugly connotation.

3         And if Mr. Martin is right and if those aren't

4    him, and if there's some other -- some other problem and

5    someone either maintaining his identity or a secondary

6    person that's out there that's done that, I just don't

7    want it to affect the Court's ultimate decision.  Because

8    if it's not him and those were mistakes, it shouldn't be

9    held against him.

10        So while it does not change the guidelines a

11   wit, I'm just concerned that it's in the report.

12        THE COURT:  All right.

13        MR. STEPHENS:  That's all I know to say.

14        THE COURT:  All right.  Thank you.

15        Mr. Bradbury?

16        MR. BRADBURY:  Yes, Your Honor.

17        Mr. Stephens is correct.  It was something that

18   I pointed out in the sentencing memorandum.  I think it's

19   something for the Court to consider.  I would point out

20   though that I did not and don't plan to later in this

21   hearing to argue for the Court to depart upward under 5K

22   pursuant to dismissed, uncharged conduct based on any of

23   these, or a variance upward.

24        But, frankly, you know, I don't think that

25   Mr. Martin has told the truth about much of anything.

1            These offenses, the FBI number matches.  They

2  are his prints.  He said this early on in the case, so we

3  had the FBI take the extra step of getting all these

4  booking photos from Detroit.  I look at the photos.  I'm

5  no expert.  I can't say that it's him.  It certainly

6  looks like him to me.

7            I bring it up simply in the context of whether

8  his credibility regarding this -- regarding these issues

9  should be questioned, as well as his testimony at trial,

10  his statement about everything that happened.  And I

11  would note in the offense, the robbery offense, in

12  paragraph 47, his girlfriend, Lashanda Powell was also

13  charged.

14            So it seems awfully coincidental that the

15  booking photos look like him, the prints match, and his

16  girlfriend was charged, and he's still maintaining that

17  he knows nothing about nothing regarding any of these

18  offenses.

19            THE COURT:  Thank you.

20            Any response?

21            MR. STEPHENS:  No, sir.

22            THE COURT:  All right.  The Court believes that

23  it's not necessary to make a finding with regard to the

24  objections raised to these paragraphs, specifically

25  paragraphs that relate to other arrests, charges, some of

1   which have been dismissed, and some of which remain

2   pending.

3           It is for these particular authorities to make

4   the ultimate determination as to whether, in fact, this

5   is the defendant, the same defendant in the case.

6           The evidence that has been presented would

7   certainly indicate that it is the same defendant, and the

8   Court notes specifically in paragraph 47 the reference to

9   Lashanda Powell also involved in that offense, which is

10  the same person that was identified as the defendant's --

11  or he's been involved in a relationship with a person by

12  the name of Lashanda Powell for some period of time as

13  reflected in other parts of the report, specifically

14  paragraph 54.

15          Also, the booking photographs taken on various

16  dates that are attached to the United States sentencing

17  memorandum, a photo from 2011, 2006, 2004, do appear to

18  be the defendant.

19          Now, the Court certainly can make its

20  determination that the sentence that will be imposed here

21  may run concurrent or consecutive to any undischarged or

22  yet imposed sentences, and the Court will address that at

23  the appropriate time under 3(g), I believe, but it's not

24  necessary for the Court to make a finding at this time

25  with regard to the objection to those particular

1  paragraphs, and will decline to do so.

2             I believe the final issue concerns whether the

3  charge outlined in paragraph 49 has been dismissed.

4             Again, I believe that falls under the same

5  category as the other paragraphs, that it's not necessary

6  for this Court to make a determination as to the ultimate

7  outcome or disposition in the related matter that was

8  filed originally in the Bourbon Circuit Court.

9             Mr. Stephens, do you see a need for the Court

10  to make any further finding?

11             MR. STEPHENS:  No, sir.  I think that in one of

12  the amendments it appears as though we are correct, it

13  was, dismissed.

14             THE COURT:  It looks like it's been dismissed.

15  7/1/13 dismissed.

16             All right.  If there are no further objections,

17  let me review the guideline calculations with the

18  parties, and I will call the parties' attention to the

19  fact that the 2013 edition of the guideline manual is

20  used in this particular case.

21             Under Count 1 the base offense level is a

22  level 24.

23             There are three enhancements under 2D1.1(b)(1)

24  that we've discussed, the two-level increase based upon

25  the firearm.

1          Two-level increase under 2D1.1(b)(14)(D), and

2  the four-level increase being an organizer or leader

3  involving five or more participants.  That has the

4  affect of increasing the base offense level up to a

5  level 32.

6          The offense level for Count 3 is a level 22.

7  There is the two-level increase under 3C1.1, the

8  obstruction increase.  That increases the adjusted

9  offense level to 24.

10          However, because the counts are grouped

11  together, the Court then looks at the higher of the two

12  counts, which is Count 1, which has a total offense

13  level of -- I'm sorry, an adjusted offense level of 32,

14  and that becomes the total offense level.

15          The defendant does not receive any credit for

16  acceptance of responsibility in this case.

17          His criminal history score is reflected in

18  paragraph 41, and he has zero criminal history points

19  that would count toward calculating a criminal history

20  category.  That places him in criminal history

21  category I.

22          And based upon those calculations, as reflected

23  in paragraph 62, Mr. Martin has a guideline range of 121

24  to 151 months.

25          The fine range in his case is a range of 17,500

44

1   to $2 million.

2           I'll also call the parties' attention to

3   another paragraph of the presentence report,

4   paragraph 74, which indicates that it is the Court's

5   discretion when a defendant has been convicted of a

6   second drug distribution offense that he may be eligible

7   for any and all federal benefits for up to ten years

8   after such conviction under Title 21, Section

9   862(a)(1)(B).

10          The guidelines that I have reviewed are adopted

11  by the Court, as well as the findings contained in the

12  presentence report.

13          I'll also adopt the findings that are contained

14  in the various addenda to the presentence report, the

15  various iterations, and the oral findings that the Court

16  has made -- has made today.

17          I believe there are no motions to be taken up

18  in terms of counts to be dismissed in this matter, so we

19  will proceed with -- with allocution at this time.

20          I'll hear first, Mr. Stephens, from you and

21  also from Mr. Martin if he would like to address the

22  Court.

23          And after I've heard from Mr. Bradbury, I'll

24  also give you the last word if you would like to take

25  it.

1          MR. STEPHENS:  Your Honor please, as we wind

2  our way through a sentencing, the Court hears at

3  sentencing about 3553(a) factors all the time.  Normally

4  the Court doesn't have before it at a guilty plea all of

5  the facts and circumstances of what makes an offense an

6  offense.  Generally, the offense conduct is set forth in

7  a page or two of a Presentence Investigation Report, but

8  in the instant offense, Your Honor heard two days of

9  proof and knows what the facts are and what the jury has

10  determined as relevant here.

11          And I look at a guideline calculation, that had

12  Mr. Martin any definable criminal history, would have

13  jumped up fairly remarkably if he had anything other than

14  a criminal history of 0 or 1.

15          And 121 to 151 I think does operate so that I

16  think any guideline sentence is appropriate.  I know the

17  Court has looked at a number of factors as a starting

18  point, whether to go upwards in that guideline range or

19  go downwards, depends in great need -- a great measure

20  about the history and circumstances of a particular

21  defendant.

22          And you look at the circumstances of the

23  offense.  You look at the need to protect the punishment,

24  the need for deterrence, and to provide a just

25  punishment, and those things, all can be reflected in a

1   sentence, in my opinion, in 121 to 151 range.

2            You have before you one of those, I guess,

3   fairly rare people who says that no matter what other

4   people may have said or had motivation or reason to say,

5   that they were not completely truthful.  And while I may

6   have dabbled in some things, I did not dabble in some

7   things to this degree.  I did not dabble with these

8   people, and what this appears to be, it is not.

9            And I know, because human nature being what it

10  is, is that that can cause concern to the Court, that

11  even at the last moment when standing before Your Honor

12  at the last day when sentence is going to be pronounced

13  that he couldn't bring himself to say, I accept

14  responsibility for what I've done, I know that I have

15  done wrong, and I am sorry.  And in most cases the Court

16  always hears that.  I know the Court appreciates when

17  people accept the legal responsibility and the factual

18  responsibility for what they do.  The Congress mandated

19  that the Court give that substantial consideration

20  because in a case of an adjusted base offense level

21  of 16, you're required to give a person three points

22  off for that acceptance.

23            So I hope that the Court will not -- I guess

24  what I'm trying to say is I hope the Court won't be

25  overly concerned about his lack of acceptance of

1    responsibility because I think that's taken into

2    consideration.  You would be looking at 87 to 108 as

3    opposed to 121 to 151, simply because Mr. Martin will not

4    say to you, "I'm sorry, I did it."

5            And I know that the Court has made some

6    findings that Mr. Martin is not credible.  I know the

7    Court is going to take that into consideration under

8    3553(a) factors, and I know it's tempting for the Court

9    to go up in that guideline.

10            However, one thing we do know is that there

11    has been a number of -- or there have been a number of

12    people that have told you that he is a good, decent,

13    and responsible father before he got into trouble down

14    here.

15            He has taken significant effort to physically

16    take care of children that he's brought into the world.

17    You have heard, as I did, close to the beginning of this

18    sentencing from his mom about the fact that sometimes we

19    forget when we're doing things like this that we are

20    leaving little ones behind who need us, little ones that

21    are getting messages that, you know, Dad is going to be

22    in a prison for a long time, and please don't learn from

23    that, please learn from the good that is contained in

24    your dad, and things of that nature.  And I worry always

25    about those that are left behind.

1          There is a support system here when Mr. Martin

2    gets out, and he will have served a lengthy sentence no

3    matter what Your Honor does.

4          So I would like to ask you to get down to the

5    lower end of the guidelines.  I think it punishes

6    appropriately as the Court is required to do.

7          And would defer to anything else that he might

8    want to say at this time.

9          THE COURT:  All right.

10         MR. STEPHENS:  Thank you, sir.

11         THE COURT:  Thank you.

12         Mr. Martin?

13         DEFENDANT MARTIN:  Thank you, Your Honor.

14         For one, I want to apologize from the Court for

15   being in having to be here, for you to have to deal with

16   me through this case.  And basically really just ask for

17   mercy from the Court and consider I do have little ones.

18   I do have a lot of little ones.  I have four of them --

19   six in number -- I have seven kids total.

20         THE COURT:  Are all of your children

21   illegitimate?  Have you been married to any of the

22   mothers of these children?

23         DEFENDANT MARTIN:  I have been with the same

24   woman for the last --

25         THE COURT:  Have you -- are you married to her,

1  because you refer to her as your wife, I think, in

2  various pleadings.

3           DEFENDANT MARTIN:  In common law marriage,

4  which I do, but not as far as -- I know some states

5  recognize it, and some don't.

6           THE COURT:  I'm just asking if you have been

7  married to any of the women that you have had all of

8  these children with?

9           MS. LASHANDA POWELL:  May I say something?

10          THE COURT:  No, ma'am, you may not.

11          So it's common law marriage but never through

12  an official ceremony recognized by a state?

13          DEFENDANT MARTIN:  Right.

14          THE COURT:  All right.  Thank you.

15          Anything else?

16          DEFENDANT MARTIN:  Other than that was just --

17  for my five children I have with Lashanda, you know, I've

18  been with since I cut the umbilical cord of them, I never

19  left their side.

20          Even my other two that I have, you know, I have

21  always been there with my kids, and I try to show them

22  the right.

23          And I would love, if you could, if I can get a

24  short sentence to show them why being around the wrong

25  company and associate with the wrong individuals, how it

1    will and it can affect their lives.

2              And that taking care on her has been a burden

3    where she can't go to work.  It has been a burden on her.

4    As far as her fitness, I believe that she is really --

5    she has to take care of them all by herself.  They are

6    all boys.  They really need a male role model around.

7              And I know through these events it seems like

8    I've not been too much of a productive role model for

9    them, but I try to keep some unity and be together.  And

10   I need to teach them now.  I know -- understanding that I

11   have been locked up for a whole year straight, but trust

12   me, it has been -- it has been on my mind.  I have done a

13   lot of thinking since then of what I need to do and what

14   not to do, you know.

15             I know in the course -- from the rehabilitation

16   and all might seem to you-all it may take a little bit

17   longer, but I've never been away from my kids this long

18   in my life, never.  I mean, you know, I don't know how

19   much of good that means to you, but, you know, to me that

20   means something, especially being boys.

21             THE COURT:  Well, being a good family man does

22   mean a lot to me, Mr. Martin, and I want to ask you about

23   that --

24             DEFENDANT MARTIN:  Yes.

25             THE COURT:  -- since you've raised it.

1          DEFENDANT MARTIN:  Yes, sir.

2          THE COURT:  I haven't raised it.  You've raised

3  it.

4          DEFENDANT MARTIN:  Yes, sir.

5          THE COURT:  And you tell me that you're a good

6  family man.  You've been with the same woman now for a

7  number of years, but you testified at trial that you were

8  down here in Kentucky partying.  You're coming down here

9  to see two separate women.  You had a room because it was

10  your birthday at the Ramada Inn.  You were going to go

11  out and stay with the one woman, and you had already been

12  with another while you were here.  And I'm a little

13  confused about being a good family man how all that fits

14  in.  Maybe you can explain it to me.

15          DEFENDANT MARTIN:  Okay.

16          THE COURT:  And I'm sure that the person that's

17  here today with you in court may like to hear your

18  explanation as well.

19          DEFENDANT MARTIN:  Well, I'm pretty sure now

20  I'm going to be explaining it later on.

21          THE COURT:  I would hope so.  I would hope that

22  maybe you would have explained before now --

23          DEFENDANT MARTIN:  Okay.  Well --

24          THE COURT:  -- before this hearing.  Because

25  this was a public trial that we had, Mr. Martin.

1    Everybody heard your story.  So why don't you explain it

2    to me first?

3              DEFENDANT MARTIN:  Okay.  Like I was -- to

4    answer your question, sir, I was coming down.  Yes, it

5    was a moment I decided myself, like I say, I have been --

6    after seeing all my kids, it's just that I'd been home

7    with them, and I have not left the home with them.

8              I knew a couple of individuals that was down

9    here that they talked me into coming down, and say, come

10   on, we can ride in, and we will ride out.  And they

11   introduced me to a young lady, and I said I was going to

12   meet later on that night, that eventually I never got a

13   chance to meet her.  I talked to her beforehand.  We went

14   out to eat but nothing -- nothing but time and no real

15   strong relationship.

16             This was nothing that I was doing for a long

17   period of time.  This was another mistake that I did, and

18   trust me, that is -- if you leave my wife and kids behind

19   and go through all of this and chasing really another

20   woman, it's really get to me more than anything,

21   especially when it's going to jeopardizes my whole

22   family.

23             And, I mean, I have been away to correct it in

24   time.  I do understand.  It is -- that's really eating me

25   up.  I'm not -- I'm not really like that, even though I

1  know it might seem different.  But that was an isolated

2  situation that I'm dealing with now daily, been having to

3  deal with now for this last year, to even try to -- to

4  make amends or remorse with her over phones and messages

5  and letters to get that back and explain to my kids that

6  that's wrong, and I need to be with her.  I need to be

7  with the woman that you love, I need to be with them, and

8  not try to play around with some other younger females

9  just to have some fun for a weekend.  Because that is --

10 that is haunting me too, Your Honor.

11         And I -- it's really no words to explain how I

12 supposed to be the family man, take care of my kids, and

13 stand by my woman, and actually come down here and do

14 that.  I do understand that, Your Honor.

15         THE COURT:  Well, I'm wondering -- this wasn't

16 one woman that you were coming down here to see, it was

17 two; right?

18         DEFENDANT MARTIN:  Right.  The other one was --

19         THE COURT:  Desiree or Jasmine, which was the

20 two that was just an accidental meeting?

21         DEFENDANT MARTIN:  It was two.

22         THE COURT:  It was two, all right.  And when

23 you were questions on -- questioned on cross-examination

24 by Mr. Bradbury, because he wasn't sure which one you

25 were saying that you were coming down here to see, I

1    believe your response was, well, you didn't -- you didn't

2    say -- you never testified that you were a good husband,

3    or something along those lines.  I believe that's what

4    you said.  I'm sure he remembers better than I do.

5              DEFENDANT MARTIN:  I do, Your Honor --

6              THE COURT:  And I'm sure he'll point that out

7    to me.

8              DEFENDANT MARTIN:  Yes.  I will point it out to

9    you.  I was most likely I said, I -- I didn't say I was a

10   faithful man --

11             THE COURT:  That's what -- yes.

12             DEFENDANT MARTIN:  -- is exactly what it was,

13   what I said.  And that was demeaning because I wasn't

14   faithful at the time.

15             And like I say, the one young woman we actually

16   never as far as, I mean, like do nothing, or no sexual

17   relationship.  I don't talk to her or anything.

18             Then the other woman I do admit -- I admit to

19   her, you know, we had a more in-depth relationship.  I

20   knew when the young gentleman had brought her up to meet,

21   we went out on -- I knew her for a longer period of time,

22   but it was nothing that strong.  It was mostly just a

23   friendship, and they was around.

24             THE COURT:  Well, again, Mr. Martin, you don't

25   have to explain all of this to me in detail.

1              DEFENDANT MARTIN:  Right.

2              THE COURT:  My questions to you are related to

3    the fact that I've gotten all of these letters --

4              DEFENDANT MARTIN:  Yeah.

5              THE COURT:  -- and statements that you've made

6    about what a good family man you are and how you need to

7    be out supporting your children.

8              And so I've asked you if you were married to

9    the women that you had these children with, and you told

10   me that it's common law marriage.

11             But then at trial you really -- you didn't

12   portray yourself as a family man at trial.  Just the

13   opposite, a playboy coming down here to Kentucky to party

14   for your birthday.  These women wanted to see you on your

15   birthday.  You didn't have anything to do with drugs,

16   although, you brought Mr. Udousoro with you, or you two

17   came together, and he brought the lady from the -- from

18   the gentleman's club.  But you're still a good family

19   man.

20             So I'm just trying to find out because you give

21   inconsistent statements, and what I think is inconsistent

22   testimony, throughout this proceeding.  And I'm just

23   trying to get to the bottom of this and find out what's

24   the truth.  I don't know if I heard it from you yet.  So

25   if there's something else I haven't heard about, please

1   tell me.  I don't want to cut you off, but I do want to

2   try to figure out what's going on here.

3              DEFENDANT MARTIN:  Okay.  I don't mind to

4   just -- I'm here now to be open and honest with you about

5   the details.  That's why I was saying, no, I was not

6   faithful that day I came down here for my birthday.  Yes,

7   I was beside myself.  Yes, I did let other individuals

8   convince me to come on with them, just ride, just have

9   fun for the weekend.  You deserve it.  You've been in the

10  house.  They always get on me.  I stay in the house.  I

11  don't leave the house.  So they convinced me, come on,

12  let's ride, let's just go, let's have some fun, you know,

13  such and such is here waiting on me.  They just want to

14  see you, just go see you and relax.

15              So when I came to court and testified, yes, I

16  did come down here, and that was the whole purpose

17  actually was to come down here to meet them, to socialize

18  with them because I was talked into that.  It was like I

19  was talked into riding down with them that night, and

20  both of them right now it's the worst mistake I have made

21  in my life, you know.

22              As far as me supporting my children or going

23  there and trying to be there for my children, I always

24  did that up until that incident, you know, and that's why

25  I would love the Court to give me a chance to make amends

1    with them and show them that I was wrong for that and

2    teach them right while they are still young, so they

3    won't grow up with a negative thinking, of growing up

4    thinking be persuaded by your friends or be persuaded by

5    other individuals that talk you into something.

6             I want to be able to tell them when I see them

7    hanging out with the wrong crowd or knowing the wrong

8    people, to stop doing right then and there.  Since I did

9    not have the opportunity for nobody to stop me.  I would

10   love to be able to tell them to stop before it's too

11   late.

12             THE COURT:  All right.

13             MR. STEPHENS:  Thank you.

14             THE COURT:  Thank you.

15             Mr. Bradbury?

16             MR. BRADBURY:  Yes, Your Honor.

17             Clearly in the course of this case, Mr. Martin

18   has never accepted responsibility.  He could have pled

19   guilty early on.  He never had to make that phone call

20   to Jessica Cavezza using Demetrius Glenn's account to

21   try to smooze her into not testifying or to subtly

22   threaten her by saying, I know where you live, I might

23   come see you if I get out.  He didn't choose to do that.

24             He chose to come here from Detroit with a guy

25   that was armed with a loaded gun, and bring a significant

1    quantity of drugs to the Eastern District of Kentucky.

2    He chose to do that.

3            He stands here today and says, well, I get

4    mixed up with the wrong people and the wrong crowd.  He

5    is the wrong crowd.  He was the one in charge.  He was

6    the source of the drugs.  He's the one that has to accept

7    responsibility and has to be deterred from criminal

8    conduct.

9            The -- certainly a guideline sentence is

10   appropriate in this case.

11           In the written motion, I argued for a sentence

12   at the top of the guidelines, or even the maximum under

13   the guidelines of 151 months.  That is still my position.

14   I think it's warranted based on not only the underlying

15   conduct of coming here with the others, being in a

16   leadership position, with the gun, and that amount of

17   drugs, but making the phone call to tamper with a

18   witness, and then choosing to get on the stand at his

19   trial and commit perjury.

20           The other things, the other offenses that he

21   may have been arrested for, that's a collateral issue.  I

22   think we have more than sufficient evidence of what he's

23   done to obstruct justice.

24           I'm not going to lecture him about being a good

25   father, but, you know, the first thing you ought to do is

1  own up to this and teach his kids and say, Daddy messed

2  up, instead of I'm getting jerked around in Kentucky, and

3  they're being unfair to me.  We're not.  He's paying the

4  penalty for what he did.

5        So I would submit that certainly specific

6  deterrence and general deterrence, you know, it didn't

7  take me long in this position to really get tired of

8  people coming here from Detroit with large amounts of

9  drugs and people ODing and dying here.  Detroit and the

10  rest of the surrounding area in Michigan needs to get the

11  message we don't want your drugs here in the Eastern

12  District, stay home.

13        Mr. Martin deserves a sentence at the top of

14  the guidelines based on his conduct and everything that

15  he did in this offense.

16        THE COURT:  Thank you.

17        Mr. Stephens, I told you I would let you have

18  the last word if you would like to take it.

19        MR. STEPHENS:  Thank you.  Just briefly.

20        One can hope that no matter what you do that if

21  you believe just one scintilla of what Mr. Martin said,

22  that he could be being candid and truthful with you when

23  he teaches his children this is not what they want to be,

24  and this is not how they want to end up.

25        And it would be my hope that he is good on that

1   promise, that he does what he can do from where he's

2   going to be to instruct his kids, to the extent that he

3   can, that this is not the choice that they need to make,

4   this is not the life they need to lead, that the example

5   that those children need to follow is not what he has

6   done, and maybe give them the opportunity to become an

7   example of what they could be in the future.

8           And I hope that what he said to you about that

9   was truthful because that's the goal that we all set for

10  our children is to show the right course, to act the

11  right course, and hope that they follow it.

12          So I truly, truly hope that that belief will

13  carry forward through his term of imprisonment here.

14          Thank you.

15          THE COURT:  Thank you, counsel.

16          The Court considers a number of factors in

17  imposing a sentence.  The Court does begin with a

18  properly calculated guideline range and then considers

19  factors of Title 18, Section 3553.

20          In some cases, quite frankly, in rare cases

21  departure -- or, I'm sorry, variances are appropriate

22  outside the guidelines.  In those circumstances, of

23  course, if the facts present themselves, it's warranted,

24  either downward or upward, as the case may be.

25          The 3553 factors include the nature and

1   circumstances of the offense and the history and

2   characteristics of the defendant.  And I will be talking

3   about these factors in more detail in just a moment.

4          But the Court also considers the need for the

5   sentence to reflect the seriousness of the offense, the

6   need to promote respect for the law, and to provide a

7   just punishment for the offense of conviction.

8          The Court also considers the issues of

9   deterrence and the need to protect the public from future

10  crimes of the defendant.

11         The Court also considers the need to avoid

12  unwarranted sentencing disparities among defendants with

13  similar records who have been found guilty of similar

14  conduct.

15         Now, in this particular case the defendant has

16  maintained throughout the course of this proceeding that

17  he is not guilty of the offenses for which he's been

18  charged.  He has convinced family members of that, and

19  they have submitted several letters to the Court.  And I

20  believe in some way he's convinced himself of that, and

21  maybe that's how you rationalize the destruction that you

22  do to other people is by saying that either you didn't do

23  it or it wasn't that -- it wasn't that bad, or I was

24  running with the wrong crowd.

25         But in this particular case, running with the

1  wrong crowd doesn't get him all the way there because he

2  still denies that he was involved in criminal activity.

3          I don't know what type of a father the

4  defendant is.  I can't make that determination based upon

5  letters that are submitted.  I don't know what type of a

6  spouse that he is.  I have impressions based upon the

7  testimony that was presented during trial and his own

8  statements to the Court, but I can't make that

9  determination.

10          But I can determine based upon his statements

11  that he has not accepted responsibility for his actions.

12  These activities with these other women that's -- that

13  may be very bad, but it's not the reason that he's here.

14  The reason that he's here is because he has been

15  convicted of a very -- a very serious drug offense.

16          And, quite frankly, his attempt to convince

17  Ms. Cavezza to testify differently doesn't count -- or

18  doesn't factor into his guideline calculation.  He would

19  have had the same guideline range if he hadn't been

20  charged with that offense as he has now, 121 to 151

21  months.  And that's due in part because he lied on the

22  witness stand.  He took the witness stand, and he lied.

23  And he knew the consequences of testifying falsely.  He

24  knew that he had to testify correctly and honestly

25  about -- about prior conviction, for example, but he

1   couldn't help himself.  He could not help himself.  He

2   couldn't bring himself to tell the truth about that, and

3   as a result he was impeached based upon -- based upon a

4   prior conviction.

5           This particular offense is a very serious

6   offense.  As Mr. Bradbury has indicated in his statements

7   to the Court, it's time that everyone stopped bringing

8   drugs into this community, not just from Detroit, but

9   from any other area, that are destroying the very fabric

10  of the community.  It's destroying families, and

11  Mr. Martin is responsible.  It's not someone else that he

12  can point the finger to.  He needs to look in the mirror

13  at himself.  He's the person responsible for this

14  criminal conduct.

15          He does not -- he has not shown respect for

16  the law.  And the Court is concerned, quite frankly,

17  that a sentence within the guideline range will not

18  deter future criminal conduct until such time as he

19  looks in the mirror and admits that he's the person

20  responsible.  He's got to take personal responsibility

21  for his actions, whether it's in his private life or

22  whether it's in these particular actions that bring him

23  here to this Court.

24          And until he does that, he's a very serious

25  risk of reoffending, and in doing so, of course, he's a

64

1  danger to the public.

2         Looking at his history, he does not have the

3  type of extensive substance abuse history that many

4  defendants try to fall back on and try to use as a

5  crutch.  He's obviously a smart person.  I don't believe

6  him when he testified that he has this tax service and

7  that's how he supports himself is through preparation of

8  tax returns.  It appears to the Court that the way he

9  supported himself up until now is by drug dealing,

10 dealing in drugs.

11        Now, he could get a good job, a good legitimate

12 job, and support his family if he chose to do that, but,

13 again, to this point I don't -- I'm not sure that he has

14 that intention.

15        When I look at all of the factors, including

16 the need to avoid unwarranted sentencing disparities,

17 they would certainly support a sentence above the

18 guideline range in the case.

19        However, in this particular matter, I do feel

20 constrained somewhat and will not go above the guideline

21 range based upon numerous improper -- not improper but

22 numerous false statements that have been made either to

23 this Court or to the jury.  They only get counted one

24 time.  When you obstruct justice, it only counts for two

25 points.  It doesn't count for four or six points.

1          But, again, by not telling the truth to the

2    Court, not telling the truth to the jury, the defendant

3    really is harming himself because until -- again, until

4    he accepts responsibility for his actions, he is a --

5    he's a danger to reoffend, and he is a danger to the

6    public.

7          However, I do believe that a sentence at the

8    very top of the guideline range will support all of the

9    factors that this Court has to consider under Title 18,

10   Section 3553, those that I've mentioned.

11         And in looking at the -- at the arguments that

12   have been made, while I do understand that the defendant

13   has a support system, he had a support system before, and

14   that did not prevent him from engaging in this conduct.

15         The Court is hopeful that perhaps after he

16   serves his sentence and upon reflection, that he'll

17   understand the importance of family, and perhaps family

18   will understand the importance of preventing him from

19   engaging in future criminal conduct.  But at this point,

20   I don't value -- or don't believe that that has a strong

21   likelihood of occurring.

22         The defendant does request that the Court show

23   some mercy, and he apologizes for taking up the Court's

24   time, but the Court is here to handle these matters.  The

25   defendant certainly does need to apologize to others but

66

1   not to this Court.  He needs to apologize to family

2   members.  He's pulled the wool over their eyes as much as

3   he tried to pull the wool over the eyes of the jury.

4   They should see it now the same way that the jury was

5   able to see it.

6          He does -- by his actions he does hurt his

7   family.  There's no doubt about that.  He certainly does

8   hurt his children, but that's a decision that he made.

9   It's not a decision someone else made.  It's a willing,

10  knowing, and a voluntary decision that he made on his

11  own, and it's unfortunate that his children have to pay

12  the price, but he needs to own up to that responsibility

13  at this point.  It's not a basis for this Court imposing

14  a lower sentence under the circumstances that are

15  presented.

16         The defendant in response to my questions

17  indicates that he was beside himself in his actions

18  that he claims that brought him to Kentucky, but the

19  Court believes that he was just acting according to his

20  own character, that there was nothing unusual for him to

21  act in the way that he did either with his personal life

22  or with his drug dealing activities, that he was who he

23  was.

24         The Court rejects any argument that he was

25  hanging with the wrong crowd.  The Court has heard that

1    argument way too many times.  And as Mr. Bradbury

2    indicates, the defendant was not hanging with the wrong

3    crowd; he is the wrong crowd.  And he's someone that

4    everyone else should stay away from.

5           Having considered the guidelines, the

6    non-binding guidelines, as well as statements made in

7    allocution, and all relevant factors of Title 18,

8    Section 3553, the Court will announce the following

9    sentence.

10          And it will be the sentence of this Court

11   pursuant to the Sentencing Reform Act of 1984, as

12   modified by the decisions in Booker and Fanfan, and I do

13   believe the following sentence would be sufficient but

14   not greater than necessary to meet the purposes of

15   Title 18, Section 3553.

16          Accordingly, it will be the judgment of the

17   Court that the defendant, Douglas Leroy Martin, will be

18   committed to the custody of the Bureau of Prisons for a

19   term of 151 months on each of Counts -- each of Counts 1

20   and 3, to run concurrently, to produce a total term of

21   incarceration of 151 months.

22          This sentence will run consecutive to any

23   undischarged state sentence that has been imposed or

24   might be imposed based upon information contained in the

25   presentence report.

1          It will recommended -- it will be recommended

2     to the United States Bureau of Prisons that he

3     participate in any available vocational training during

4     the period of incarceration.

5          Upon release he will be placed on supervised

6     release for a term of six years on Count 1 and three

7     years on Count 3, to run concurrently.

8          And within 72 hours of release from the custody

9     of the Bureau of Prisons, he shall report in person to

10    the probation office in the district in which he is

11    released.

12          While on supervised release, Mr. Martin shall

13    not commit another federal, state, or local crime, shall

14    comply with the standard conditions that have been

15    adopted by this Court, as well as the following

16    additional conditions.

17          He shall not possess a firearm, destructive

18    device, ammunition, or a dangerous weapon.

19          He shall submit to one drug test within 15 days

20    of release and at least two periodic drug tests

21    thereafter.

22          He will also be required to comply with the

23    following special conditions.

24          First, he must provide the probation office

25    with access to any requested financial information.

1          Next, he must submit his person, residence,

2    curtilage, office, or vehicle to a search upon the

3    direction and discretion of the probation office, and the

4    Court imposes this condition based upon the nature of

5    this particular offense and for the protection of the

6    probation officers that will be responsible for

7    supervising the defendant.

8          He will be required to refrain from obstructing

9    or attempting to obstruct or tamper in any fashion with

10   the efficiency and accuracy of any prohibited substance

11   testing, which is required as a condition of release.

12         Pursuant to Title 21, Section 862(a)(1)(B),

13   this Court finds that this defendant should be ineligible

14   for any and all federal benefits for ten years following

15   his conviction.

16         Additionally, the Court will impose the special

17   conditions that have been adopted in this district with

18   regard to prescription drugs, and these conditions are

19   imposed based upon the fact that this defendant was

20   involved in the illegal sale or attempted sale of

21   prescription medications.

22         Now, the conditions include the following:  He

23   must provide the probation office within seven days of

24   release from the custody of the Bureau of Prisons with a

25   written report in a form that the probation office

1    directs listing each and every prescription medication in

2    his possession, custody, or control.

3          The list shall include, but is not limited to,

4    any prescription medication that contains a controlled

5    substance, and it encompasses all current, past, and

6    outdated or expired prescription medications in the

7    defendant's possession, custody, or control at the time

8    of the report.

9          He will be required to notify the probation

10   office immediately, and that is within no later than

11   72 hours, if he receives any prescription for medication

12   containing a controlled substance, and that would be

13   during the period of supervised release.

14         He will be required to provide the probation

15   office with such documentation and verification as the

16   probation office may reasonably request and in a form

17   that it directs.

18         He must also comply strictly with the orders of

19   any physician or other prescribing source with respect to

20   the use of all prescription medications.

21         And he will be required to report any theft or

22   destruction of his prescription medications to the

23   probation office within 72 hours of any such theft or

24   destruction.

25         Based upon his current financial situation, the

1  Court will waive the fine requirement and community

2  restitution.

3          But he will be required to pay the special

4  assessment of $200, which will be due immediately.

5          He will also be required to forfeit any

6  interest in the amount of currency seized at the time of

7  his arrest in the amount of $10,546.

8          The Court will recommend that he be placed at

9  the location closest to Detroit, Michigan, for which he

10 would qualify.

11         And following this hearing, he will be remanded

12 back into the custody of the United States Marshal

13 pending designation of where he will serve the remainder

14 of his sentence.

15         The Court will direct that the letters that

16 were received today will also be filed in the record of

17 this proceeding.

18         And in just a moment, I will ask the clerk to

19 advise Mr. Martin of his rights of appeal.

20         Before I do that, let me ask the attorneys

21 three questions.

22         First, if there is any objection to the

23 sentence announced.

24         Second, if there are any Bostic objections.

25 That would include objections to any matters for which

1  there have not been any objections made to this point,

2  and that would allow the Court to address those matters

3  and properly preserve those issues for appeal.

4          And then finally, the Court will ask the

5  parties if they would like the Court to make additional

6  findings to support the sentence that has been announced.

7          Mr. Bradbury, I'll start with you.

8          MR. BRADBURY:  Yes, Your Honor.  No objections,

9  no request for any additional findings.

10          It did dawn on me as we sat here though, this

11  was a superseding indictment that added the witness

12  intimidation charge, so I would move to dismiss the

13  original indictment.

14          THE COURT:  All right.  That motion will be

15  sustained effective upon entry of the judgment in the

16  case.

17          MR. BRADBURY:  Thank you.

18          THE COURT:  Mr. Stephens, your objections

19  to the -- that were raised to the presentence report are,

20  of course, preserved, and you don't need to renew --

21          MR. STEPHENS:  Thank you.

22          THE COURT:  -- those, but they're noted for the

23  record.

24          MR. STEPHENS:  The only other Bostic issue I

25  would have, Your Honor please, and I think you clued me

1  in on it, and I still missed it, under paragraph 74 of

2  the now federal benefits, the Court has made a finding, I

3  presume, that at paragraph 38 that Mr. Martin was found

4  guilty of a prior drug distribution count, and I presume

5  that the Court is determining that that what appears to

6  me to be a misdemeanor offense would qualify under

7  21 United States Code, Section 862 as -- crimes for

8  862(a)(1)(B) as a second drug distribution offense.

9           I apologize, I don't know in looking at that

10  statute whether the requirement as a -- for a subsequent

11  offense is required to be a felony or simply a

12  distribution count like a trafficking in marijuana under

13  Kentucky law, under eight ounces would be a misdemeanor.

14  So if you could make findings for that, I have --

15           THE COURT:  Yes, sir.

16           MR. STEPHENS:  -- protected the record.

17           THE COURT:  Yes.  Under my reading of that

18  particular statutory section, 21, 862(a)(1)(B), this

19  would be a qualifying offense.

20           If it did not qualify under that particular

21  section, the provision would apply for a five-year -- the

22  Court could apply five-year prohibition for federal

23  benefits.  But for a second conviction, that increases to

24  ten years, and that is the Court's reading of that

25  particular section, that this would, in fact, qualify.

74

1    But the objection -- your objection will be noted for the

2    record --

3              MR. STEPHENS:  All right.  Thank you.

4              THE COURT:  -- to that finding.

5              MR. BRADBURY:  And I think defense counsel may

6    have indicated the offense in paragraph 38 was a

7    misdemeanor.  I believe that is a felony conviction.

8    That's the one that was the subject of the 851 notice

9    that was brought out in trial.

10             MR. STEPHENS:  That certainly could be correct.

11   And if I misspoke, I misspoke.  I believe we had that

12   discussion early on.  And if, in fact, it was charged as

13   a felony, then it would be probably subject to the 851

14   enhancement, assuming that's the case.

15             THE COURT:  All right.  I believe there were

16   exhibits that were introduced at trial that relate to

17   that --

18             MR. BRADBURY:  There were.

19             THE COURT:  -- charge.

20             MR. STEPHENS:  We have no further requests for

21   additional findings.

22             THE COURT:  All right.  Thank you.

23             Let me ask the clerk at this time to advise

24   Mr. Martin of his rights of appeal.

25             THE CLERK:  Yes, Your Honor.

1              You are notified by this Court you have a right

2    to appeal your case to the Sixth Circuit Court of

3    Appeals, which on proper appeal will review this case

4    and determine that there has or has not been an error of

5    law.

6              However, a defendant may waive those rights, as

7    part of a plea agreement -- I don't believe there is a

8    plea agreement in this case, Your Honor.

9              THE COURT:  No, there's not.

10             THE CLERK:  If I may strike that language.

11             THE COURT:  Yes, sir.

12             THE CLERK:  If you do not have sufficient money

13   to pay for the appeal, you have a right to apply for

14   leave to appeal in forma pauperis, which means you may

15   appeal without paying for it.

16             If you are without the services of an attorney

17   and desire to appeal, and so request, the clerk of this

18   Court shall prepare and file forthwith a notice of appeal

19   on your behalf.

20             With few exceptions, this notice must be filed

21   within 14 days from the date of entry of this judgment.

22             If you do not have sufficient funds to employ

23   an attorney, the Court of Appeals may appoint your

24   present attorney or another to prosecute -- or another to

25   prosecute the appeal for you.

1          You may request to be released on a reasonable
2     bond pending the appeal.
3          THE COURT:  All right.  Thank you.
4          And, Mr. Martin, you're about to be handed what
5     was just read to you.  Please, when you receive your
6     rights of appeal, if you could review it with
7     Mr. Stephens, make sure that you do understand your
8     rights of appeal.
9          And if you would sign the original, and there's
10    one copy you can keep for yourself.
11         And the clerk is removing the section that
12    ordinarily advises the defendant about the consequences
13    of a plea agreement.  There was no plea agreement, as
14    indicated, in this case for Mr. Martin.
15         Mitch, here are the two letters.  The original
16    is there.
17         Thank you.
18     (Whereupon, the defendant, Douglas Leroy Martin,
19    signs the form.)
20         MR. STEPHENS:  Your Honor, we have both
21    initialed the portion that Mr. Zegafuse whited out
22    essentially, and have signed the acknowledgment form.
23         THE COURT:  All right.  Thank you.
24         We're going to take a brief recess before the
25    next matter is called, unless there are other issues that

1   need to be taken up in the case.

2               MR. BRADBURY:  No, Your Honor.

3               MR. STEPHENS:  No.

4               THE COURT:  All right.  If not, we'll be in

5   recess.

6               Ma'am, you can either put your hand down, or

7   I'm going to have the marshal remove you.  Okay?

8   Understood?

9               MS. LASHANDA POWELL:  Yes, sir.

10              THE COURT:  All right.  We'll be in recess for

11  five minutes.

12       (Whereupon, the Sentencing Hearing proceedings

13  concluded at 3:20 p.m.)

14                   C E R T I F I C A T E

15       I, Peggy W. Weber, certify that the foregoing is a

16  correct transcript from the record of proceedings in the

17  above-entitled matter.

18

19

20   May 14, 2014_____          s/Peggy W. Weber_____
        DATE                          PEGGY W. WEBER, RPR

21

22

23

24

25