UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 13-081-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5: 16-440-DCR |
| V. ) | |
| ) | |
| DOUGLAS LEROY MARTIN, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Douglas Martin is a federal inmate, currently housed at the Fort Dix Federal Correctional Institution. Proceeding without counsel, Martin filed a motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on November 23, 2016.[1] [Record No. 311] The motion was referred to a United States Magistrate Judge for issuance of a recommended disposition in accordance with 28 U.S.C. § 636(b)(1)(B),. Magistrate Judge Robert E. Wier issued a Recommended Disposition on April 12, 2017, recommending that the Court deny the motion, deny Martin's request for an evidentiary hearing, and decline to issue a Certificate of Appealability. [Record No. 329] Martin filed objections to the Recommended Disposition on May 9, 2017. [Record No. 330]

D*e novo* is required of any portion of the magistrate judge's disposition to which objections have been filed. Fed. R. Civ. P. 72(b)(3). The Court has considered Martin's

---

[1] This is the date on which Martin sent his motion to the appropriate address, which is deemed the date of filing pursuant to the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002).

objections and conducted a *de novo* review of his claims. Martin's objections will be overruled and his motion denied for the following reasons.

**I.**

Law enforcement officers stopped a vehicle for speeding near Paris, Kentucky, during the early hours of March 15, 2013. [Pre-Sentence Report ("PSR"), p. 4] The officers requested that the four occupants (Martin and his co-defendants Aniema Udousoro, Andre Hawkins, and Jessica Cavezza) exit the vehicle due to the odor of marijuana coming from its interior. [*Id.*] A subsequent search of the car and occupants revealed a loaded gun on Udousuro's person, large quantities of cash and a small bag of marijuana. [*Id.*] The defendants admitted that they had just completed narcotics sales at the nearby Red Roof Inn in statements to the officers. [*Id.* at 5]

Martin was arrested as a result of the traffic stop. [*Id.*] Martin later contacted co-Defendant Cavezza by telephone while he was housed at the Fayette County Detention Center. [*Id.* at 6] He directed Cavezza to attribute the drugs involved in the conspiracy to Hawkins. He further indicated that he had information concerning her pending court date, her attorney's name, and her residence. [*Id.*]

A grand jury indicted Martin and several others for conspiring to distribute heroin, cocaine, oxycodone, and hydrocodone on June 6, 2013. [Record No. 1] The grand jury returned a superseding indictment on October 3, 2013, which charged a longer period for the conspiracy and charged Martin individually with using or attempting to use intimidation, threats, or corrupt persuasion toward Cavezza with the intent to influence, delay, or prevent her testimony in a jury trial or other official proceeding. [Record No. 103]

A jury ultimately convicted Martin of the controlled substances conspiracy and of witness tampering. [Record No. 125] Martin was sentenced on March 24, 2014, to a 151-month term of imprisonment followed by 6 years of supervised release. [Record No. 202] He subsequently appealed, arguing that his sentence was unreasonable, that information obtained during warrantless searches should have been suppressed, and that there was insufficient proof to support his conviction for witness tampering. [Record No. 291] However, the United States Court of Appeals for the Sixth Circuit affirmed Martin's conviction and sentence. [*Id.*]

**II.**

A defendant seeking relief under 28 U.S.C. § 2255 may assert that: the sentence was imposed in violation of the United States Constitution or federal law; the Court lacked jurisdiction; his or her sentence exceeded the maximum penalty authorized by law; or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a claim of constitutional error, a defendant must establish an error of constitutional magnitude that had a substantial and injurious effect or impact on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a claim of nonconstitutional error, a defendant must show a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F. 3d 627, 630 (6th Cir. 1990)) (internal quotation marks omitted).

**III.**

Martin moves for relief under § 2255 based on claims of ineffective assistance of counsel. [Record No. 311] He first argues that his trial counsel was ineffective for failing to secure a favorable plea bargain, failing to properly argue against the imposition of a two-level enhancement for his co-conspirator's possession of a firearm, and failure to properly argue

against a four-level enhancement for his role as an organizer or leader. [*Id*.] Next, he contends that his appellate counsel was ineffective for failing to challenge the imposition of sentencing enhancements for his co-defendant's possession of a firearm, Martin's role as an organizer or leader, and obstruction. [*Id*.] Martin argues in his objections to the Magistrate Judge's Recommended Disposition that his counsel was ineffective for failing to secure a favorable plea bargain and also raises an issue not presented to the Magistrate Judge—that his trial counsel was ineffective for failing to interview several witnesses. [Record No. 330]

Ineffective assistance of counsel is a mixed question of law and fact that is reviewed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed, a defendant must show that (i) counsel's performance was deficient by falling "below an objective standard of reasonableness" and (ii) the defendant was "prejudiced" by the deficient performance. *Id.* at 687, 688.

To determine deficient performance, the court must "conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688–89) (internal citation omitted); *Poindexter v. Mitchell*, 454 F.3d 564, 577 (6th Cir. 2006). Judicial scrutiny of counsel's performance is "highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id*. at 694. The Sixth Circuit has held "that a petitioner need not prove by a preponderance of the evidence that the result would have been different, but merely that there is a reasonable probability that the result would have been different." *Skaggs v. Parker*, 235 F.3d 261, 271 (6th Cir. 2000).

**A.     Ineffective Assistance of Trial Counsel**

*i. Sentencing Enhancements*

Imposition of the two-level firearm enhancement was appropriate in Martin's case and Martin's arguments to the contrary are meritless.

Under United States Sentencing Guidelines ("U.S.S.G.") section 2D1.1(b)(1), a defendant's offense calculation is increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the offense. The Government must show "by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012) (internal quotation marks omitted). Where, as here, the defendant is involved in a drug conspiracy, the government may establish constructive possession of a firearm by showing "that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy." *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (internal quotation marks omitted). Specifically, the government must establish "that a co-conspirator's possession in furtherance of the conspiracy was reasonably foreseeable," requiring "some nexus between the firearm and the conspiracy in order for one co-conspirator's possession to be imputed to another." *United States v. Clisby*, 636 F. App'x 243, 248 (6th Cir. 2016). Once

this showing is made, the burden then shifts to the defendant to establish that it was clearly improbable that the weapon was connected to the offense. *Greeno*, 679 F.3d at 514.

Martin's argument fails because the government introduced sufficient evidence to establish that he could reasonably foresee that Uduosoro possessed the subject firearm in connection with the drug conspiracy. The evidence presented at trial demonstrated that Martin knew that Uduosoro carried a firearm. Martin testified that he knew that Uduosoro had a concealed carry permit and that he often possessed a firearm when he worked at a strip club. [Record No. 219, pp. 116-17] Martin and Uduosoro were from Detroit and had an established relationship that included texting about controlled substance transactions. [Record No. 217, 208-11] Based on Martin's familiarity with Uduosoro and his practices involving controlled substances, it was reasonably foreseeable to him that Uduosoro would possess a firearm when conducting a controlled substance transaction.

Additionally, Martin could reasonably anticipate that Uduosoro possessed the firearm in connection with the particular controlled substance conspiracy for which they were eventually charged. Martin and his co-conspirators were leaving a hotel where they had competed one drug transaction (and were on their way to complete another) when their vehicle was stopped and law enforcement seized controlled substances. [Record No. 217, pp. 116-19] Uduosoro possessed the firearm in connection with the offense.

Uduosoro was in the front passenger seat of the vehicle with a pistol in a holster on his left hip while Martin was seated in the back passenger seat. From his location, Martin would have been able to see the firearm. [*Id*. at 119-20] Moreover, Martin likely would have seen the firearm at some point when they were leaving the hotel room and entering the vehicle. This evidence, together with Martin's general familiarity with Uduosoro and his involvement

with controlled substances, is sufficient to establish that Martin could reasonably foresee that Uduosoro possessed the firearm in connection with the drug transactions.

"[I]f the government proves by a preponderance of the evidence that the defendant possessed a firearm, a presumption arises that the weapon was connected to the offense." *Clisby*, 636 F. App'x at 247 (internal quotation marks and citation omitted). Martin has not identified any evidence that would rebut this presumption. Accordingly, his argument that his counsel was ineffective for failing to properly argue against this enhancement fails because the enhancement was appropriate and any argument to the contrary is without basis.

Martin also argues that his attorney was ineffective at sentencing for failing to properly argue against a four-level aggravating role enhancement. Specifically, he contends that the Court improperly classified his co-defendant Cavezza as a participant in the offense because the evidence only established that she had entered into a buyer-seller relationship with him. Martin's argument fails because Cavezza was properly classified as a participant and Martin's argument would not have affected the Court's decision to impose the role adjustment in issue.

Under U.S.S.G. § 3B1.1(a), a defendant's offense level may be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five participants or was otherwise extensive . . . ." The Application Notes to this section provide that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1(a), Application Note 1. A participant includes all individuals who "were (i) aware of the criminal objective, and (ii) knowingly offered their assistance." *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002).

The evidence presented during trial established that Cavezza's involvement extended beyond a buyer-seller relationship. In short, she was a participant in the conspiracy. Cavezza pled guilty to the controlled substance conspiracy for which Martin was also ultimately convicted. [Record No. 219, p. 8] She also had been purchasing heroin from Martin "almost . . . daily" for weeks prior to the arrest. [*Id*. at 11] Shortly before the arrest, Cavezza was present in the hotel room with Martin at the Red Roof Inn and observed him weigh, tie, and bag a powder substance that she believed to be either cocaine or heroin. [*Id*. at 18-21] She then drove Martin to various places around Lexington while he conducted drug transactions. [*Id*. at 24-29] She further testified to having personally arranged a drug transaction and that she, Martin, Uduosoro, and Hawkins were on the way to complete that transaction at the time of the traffic stop. [*Id*. at 30-35]

Cavezza's description of her involvement refutes Martin's argument that she was in a buyer-seller relationship with a different member of the conspiracy and was not a participant in the conspiracy charged. Cavezza was clearly aware of the criminal objective. She observed Martin bagging controlled substances to be sold and also observed him conduct several drug transactions. She also "knowingly offered [her] assistance" by driving Martin to various locations for him to sell controlled substances and by personally arranging a controlled substance transaction. Cavezza was clearly a participant in the conspiracy and Martin's argument to the contrary fails. His counsel was not ineffective for declining to raise Martin's meritless buyer-seller argument at sentencing.

### ii. Plea Deal

Martin also asserts that his trial counsel was ineffective for failing to secure a favorable plea deal. He states in conclusory terms that his attorney "failed to engage in plea negotiations

with the Government and failed to secure a favorable plea offer." [Record No. 311] This conclusory statement is insufficient to establish that Martin's counsel's performance fell below an objective standard of reasonableness. Martin does not allege that his counsel failed to inform him of a plea offer, or otherwise misled him regarding a plea deal. Instead, his only concern is that his counsel did not secure a favorable deal.[2]

"[T]here is no constitutional right to plea bargain . . . ." *Weatherford v. Busey*, 97 S.Ct. 837, 846 (1977). Moreover, "the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client . . . [and] the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000). Given this nature of plea agreements, it does not appear that an attorney may be held responsible solely for the prosecutor's decision not to make an offer that is acceptable to the defendant. Absent some specific allegation of deficient performance, Martin has failed to show that his attorney performed below an objective standard of reasonableness.

---

[2] Martin seems to contend in his objections that he was offered a plea deal that would have resulted in a lower sentence and that he was prejudiced by taking his case to trial. [Record No. 330] However, Martin alleges no supporting facts. He does not allege that his attorney acted improperly in some way that led Martin to go to trial against his best interest. Further, Martin fails to provide any details regarding s plea offer that would establish that it was a viable alternative. Absent any factual support, Martin fails to state an ineffective assistance claim on this basis.

While there is no evidence to support this particular claim, there is evidence in the record supporting a conclusion that Martin failed to follow his attorney's advice during trial. Against his counsel's advice, Martin testified in his own defense. Notwithstanding warnings of his counsel (which were repeated during a bench conference), Martin was effectively impeached during cross-examination by the Assistant United States Attorney handling the matter.

Likewise, Martin has not demonstrated that the result of the proceeding would have been different if he had received a favorable plea bargain—that is, that he would have accepted a plea deal and admitted guilt. Instead, the record reflects that Martin maintained his innocence throughout the proceeding and chose to take his case to trial to contest the charges. Indeed, at trial, Martin testified in his own defense based on his alleged innocence of the charges. He stated that the other witnesses' testimony regarding the controlled substance transactions was false:

> I had no knowledge of the drugs in the hotel room. I did no drug selling to nobody, did not give no drugs to nobody. . . . I did not have no drugs, and did not get no drugs. I did not make no money off any drug sales while I was down here in Kentucky.

[Record No. 219, p. 104] Martin chose to protest the charges and maintain his innocence and had no intention of admitting guilt by entering into a plea deal. Thus, even if it could be argued that his counsel's performance was deficient for failing to secure a plea deal, Martin did not suffer any prejudice as a result.

### iii. Trial Witnesses

Martin identifies various witnesses and contends in his objections that his counsel was ineffective for failing to interview and present their testimony to the jury. He contends that these witnesses could have confirmed his "actual innocence" and that he "had no involvement with any drug sales." [Record No. 330] "[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (citation omitted).

Martin's brief argument is insufficient to state a valid claim. He states in conclusory fashion that these witnesses would have established his innocence, but states no facts regarding

the nature of these witnesses' testimony. Rather than provide supporting facts, Martin asks the Court to speculate that the testimony of these witnesses would have demonstrated his innocence, despite the ample evidence at trial that establishing his guilt of the crimes charged. This is insufficient to establish a reasonable probability that the outcome of the trial would have been different had his attorney interviewed and presented these witnesses. Accordingly, Martin has not demonstrated that his counsel was deficient for failing to present these witnesses or that he was prejudiced as a result.

### B. Ineffective Assistance of Appellate Counsel

Martin argues that his appellate counsel was ineffective for declining to challenge the Court's imposition of three enhancements at sentencing: the firearm enhancement, the aggravating role enhancement, and the obstruction enhancement. For the reasons previously stated, Martin's arguments relating to the firearm and aggravating role enhancements are meritless and Martin's appellate counsel was not ineffective for failing to raise them. Likewise, Martin's appellate counsel was not ineffective for declining to challenge the obstruction enhancement.

To establish deficient performance in the appellate context, a defendant "must demonstrate that his appellate counsel made an objectively unreasonable decision by choosing to raise other issues instead of [the challenged issue], meaning that issue was clearly stronger than issues that counsel did present." *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (internal quotation marks and citation omitted). To show prejudice, a defendant must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure to raise this issue on appeal, he would have prevailed." *Id*. (internal quotation marks and citation

omitted). Appellate counsel is not ineffective for failing to raise a meritless issue on appeal. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (citation omitted).

The Court imposed an obstruction enhancement at Martin's sentencing because he "engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense . . . ." U.S.S.G. § 2D1.1(b)(15)(D). Martin argues that this enhancement was improper because it constituted double-counting which occurs when "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Walters*, 775 F.3d 778, 782 (6th Cir. 2015) (internal quotation marks and citation omitted).

Martin's argument fails because double counting does not occur "if the defendant is punished for distinct aspects of his conduct." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (internal quotation marks and citation omitted). Martin's conviction for witness tampering was based on his conduct in contacting Cavezza and directing her to attribute all illegal conduct to Hawkins. [Record No. 219, p. 43] In contrast, the obstruction enhancement is based on Martin's conduct when testifying at trial.

The Court concluded during the sentencing hearing that the obstruction enhancement was appropriate because Martin had made false statements regarding material facts by testifying that Cavezza's testimony was false and that he did not have any involvement in the drug trafficking activities. [Record No. 220, p. 16] Simply stated, the witness tampering conviction and obstruction enhancement were based on entirely distinct aspects of Martin's conduct and no double counting occurred. Martin's appellate counsel was not ineffective for declining to raise this frivolous argument.

## C. Evidentiary Hearing

A defendant is not entitled to an evidentiary hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Additionally, a hearing is unnecessary "where the [defendant's] allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (internal quotation marks and citations omitted). Here, the record conclusively establish that Martin is not entitled to relief on his claims. The majority of Martin's claims are based on meritless arguments that have been decided on legal grounds and do not require an evidentiary hearing. Where Martin's claims are based on factual allegations, his allegations are either conclusions (rather than statements of fact) or are contradicted by the record.

Martin has not presented any factual disputes that would entitle him to an evidentiary hearing. Further, the record conclusively establishes that he is not entitled to relief.

## III.

Martin is not entitled to a Certificate of Appealability regarding any issue or claim. Under *Slack v. McDaniel*, 529 U.S. 473, 478 (2000), he must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right . . . ." to obtain such relief. However, Martin has not stated a valid claim of the denial of a constitutional right and issuance of a Certificate of Appealability would not be appropriate.

## IV.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The Magistrate Judge's Recommended Disposition [Record No. 329] is **ADOPTED** and **INCORPORATED**, by reference. Martin's objections to the Magistrate Judge's Recommended Disposition are **OVERRULED**.

2. Martin's motion to vacate under 28 U.S.C. § 2255 [Record No. 311], including his request for an evidentiary hearing, is **DENIED**.

3. A Certificate of Appealability shall not issue.

4. A separate Judgment will issue this date.

This 8th day of June, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge